Afshin Siman SBN 309956
afshinsiman@gmail.com
865 Comstock Ave.
Los Angeles, CA 90024
Telephone (310) 254-7339

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SUZANNE KNORR**, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>*v.*<br><br>**ELOCAL USA LLC,** a Delaware corporation,<br><br>   *Defendant*. | Case No. :<br>2:17-cv-<br>5339<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

   Plaintiff Suzanne Knorr ("Knorr" or "Plaintiff Knorr") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant eLocal USA LLC ("eLocal") to stop Defendant's practice of sending unsolicited text messages to cellular telephones and to obtain redress, including injunctive relief, for all persons injured by its conduct. Plaintiff, for her Complaint, allege as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

   1.  eLocal is an Internet advertising company "whose mission is to connect consumers with local businesses, with a particular specialization in the home services and legal verticals."[1]  With respect to the legal field, Defendant connects consumers looking to consult an attorney to an actual

---

[1] See http://www.linkedin.com/company-beta/294101/

attorney via telephone.  The consumer can then discuss a legal issue with an attorney via eLocal's connection.

2.     Unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote its business, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the sending of repeated unsolicited text messages to consumers' cellular telephones -- without consent, and to those on the National Do Not Call Registry -- all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

3.     Text messages, like the ones sent in the instant action, are considered calls under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *see also Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

A. **Bulk SMS Marketing**

4.     In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk messages cheaply.

5.     Bulk text messaging, or SMS marketing, has emerged as a new and direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

6.     When an SMS message call is successfully made, the recipient's cell phone alerts him or her that a message has been received. As cellular telephones are inherently mobile and are

frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

**B.  Defendant Transmits Text Messages to Consumers Who Do Not Want Them**

7.     Defendant sends solicitation text messages from telephone numbers 512-675-2373 and 361-209-7903.

8.     In sending the text messages at issue in this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

9.     As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

10.     Yet in violation of this rule, Defendant fails to obtain any prior express written consent to sent text messages to cellular telephone numbers.

11.     Defendant sent, or had sent on its behalf, the same (or substantially the same) text messages *en masse* to thousands of cellular telephone numbers throughout the United States.

12.     Defendant was and is aware that text messages were and are being made without the prior express written consent of the text message recipients.

13.     Upon information and belief, and via investigation by Plaintiff's attorneys, each of the text messages sent to Plaintiff and the Classes are affiliated with Defendant.

14.     By sending the text messages at issue in this Complaint, Defendant caused Plaintiff and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such text messages, a loss of value realized for the monies consumers paid to their carriers for the receipt of such text messages, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

15.     In response to Defendant's unlawful conduct, Plaintiff filed this action seeking an injunction requiring Defendant to cease all unsolicited text messaging activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

16.     Plaintiff Suzanne Knorr is a natural person and resident of Newbury Park, California.

17.     Defendant eLocal is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 1100 E. Hector St., Ste. 101, Conshohocken, Pennsylvania 19428.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because it conducts a significant amount of business in this District, solicits consumers in this District, sends and continues to send unsolicited text messages in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

19.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts a significant amount of business within this District and markets to this District, and because the wrongful conduct giving rise to this case occurred in and/or was directed to this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

20.     As mentioned above, eLocal is an Internet advertising company that connects consumers looking to consult an attorney to an actual attorney via telephone for consultation.

21.     In recent years, companies such as Defendant have turned to unsolicited telemarketing as a way to increase its customer base. Widespread telemarketing, often through third parties such as Defendant's affiliates is a major method by which Defendant recruits new customers.

22.     At all times material to this Complaint Defendant was and is fully aware that unsolicited telemarketing text messages are being sent to consumers' cellular telephones through their own efforts and their agents.

23.     Defendant, through itself or various affiliates, knowingly sent (and continues to send) unsolicited telemarketing text messages without the prior express consent of the recipients and knowingly continued to text message them after requests to stop. In so doing, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Classes, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF SUZANNE KNORR

24.     On January 24, 2006, Plaintiff's cellular telephone number was registered on the National Do Not Call Registry.

25.     Beginning on or around May 4, 2017, and more than 30 days after her cellular telephone number was registered on the National Do Not Call Registry, Plaintiff began receiving unsolicited text messages on her cellular telephone from telephone numbers 512-675-2373 and 361-209-7903.

26.     Telephone numbers 512-675-2373 and 361-209-7903 are owned and/or otherwise controlled by eLocal, or a third party on its behalf.

27.     On May 4, 2017 at 10:49 a.m., Plaintiff received a text message from telephone number 512-675-2373 stating, "We help injured people get the cash settlements they deserve.  Don't let insurance companies lowball you, call 512-675-2373 for a free consultation today!"

28.     A screenshot image of the May 4, 2017 text message is reproduced below:





29.     On May 5, 2017, at 11:45 a.m., Plaintiff received another text from telephone number 361-209-7903 stating, "If you got hurt in an accident, make sure you get the most $$ for  your pain and suffering and medical bills.  Call 361-209-7903 for a free consultation."

30.     A screenshot image of the May 5, 2017 text message is reproduced below:





31.     Plaintiff does not have a relationship with Defendant, has never provided her telephone number directly to Defendant, or requested that Defendant send text messages to her. Simply put, Plaintiff has never provided her prior express consent to Defendant to send text messages to her and have no business relationship with Defendant.

32.     By sending unauthorized text messages as alleged herein, Defendant has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the calls disturbed Plaintiff's use and enjoyment of their cellular telephones, in addition to the wear and tear on the cellular telephone's hardware (including the cellular telephone's battery) and the consumption of memory on their cellular telephones. In the present case, a consumer could be subjected to many unsolicited text messages as Defendant fails to secure prior express written consent to contact consumers on their cellular telephones.

33.     In order to redress these injuries, Plaintiff, on behalf of herself and the Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited voice and text messages to cellular telephones.

34.     On behalf of the Classes, Plaintiff seeks an injunction requiring Defendant to cease all wireless text-messaging activities and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

35.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seek certification of the following two Classes:

**Autodialed No Consent Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present: (1) Defendant (or a third person acting on behalf of Defendant) sent text messages, (2) to the person's cellular telephone number, and (3) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express written consent to send automated text messages to the Plaintiff.

**No Consent DNC Class:** All individuals in the United States (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days, (2) who thereafter received more than one telephone call made by or on behalf of Defendant within a 12-month period starting February 12, 2012 to the present, and (3) for whom Defendant obtained prior express consent to call in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

36.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

37.     **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant sent autodialed text messages to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendant's records.

38.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)  whether Defendant's conduct constitutes a violation of the TCPA;

(b)  whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Classes;

(c)  whether members of the Classes are entitled to statutory and treble damages based on the willfulness of Defendant's conduct; and

(d)  whether Defendant obtained prior express written consent to contact any class members.

39.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to the Classes.

40.     **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and

Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff the Autodialed No Consent Class)**

41.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

42.     Defendant sent autodialed text messages to cellular telephone numbers belonging to Plaintiff and other members of the Autodialed No Consent Class without first obtaining prior express consent to receive such autodialed text messages.

43.     Defendant sent the text autodialed text messages using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendant's autodialer disseminated information *en masse* to Plaintiff and other consumers.

44.     By sending the unsolicited text messages to Plaintiff and the cellular telephones of members of the Autodialed No Consent Class without their prior express consent, and by utilizing an

automatic telephone dialing system to make those calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

45.     As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

46.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Autodialed No Consent Class.

## SECOND CAUSE OF ACTION
### Violation of 47 U.S.C. § 227, et seq.
### (On behalf of Plaintiff and the No Consent DNC Class)

47.     Plaintiff incorporates the foregoing factual allegations as if fully set forth herein.

48.     47 U.S.C. §227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

49.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

50.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls

made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

51.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to residential telephone subscribers such as Plaintiff and the No Consent DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry. These consumers requested to not receive calls from Defendant as set forth in 47 C.F.R. § 64.1200(d)(3).

52.     Defendant made more than one unsolicited telephone call to Plaintiff within a 12-month period without Plaintiff's prior express consent to receive such calls. Defendant also made more than one unsolicited telephone call to each member of the Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and members of the No Consent DNC Class never provided any form of consent to receive telephone calls from Defendant, oral or written, and/or Defendant does not have a current record of consent to place telemarketing calls to them. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the No Consent DNC Class received more than one telephone calls in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

53.     Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential telephone subscribers, such as Plaintiff and the No Consent DNC Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them, and by not informing and training its personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

54.     As a result of Defendant's unlawful conduct, Plaintiff and the DNC No Consent Class suffered actual damages and, under section 47 U.S.C. § 227(c), Plaintiff and each member of the No Consent DNC Class are each entitled to receive up to $500 in damages for each violation of 47 C.F.R. § 64.1200.

55.     In the event that the Court determines that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the No Consent DNC Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

1.  An order certifying the Classes as defined above, appointing Plaintiff Suzanne Knorr as the representative of the Classes, and appointing her counsel as Class Counsel;

2.  An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

3.  An order declaring that Defendant's actions, as set out above, violate the TCPA;

4.  A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

5.  An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

6.  An order requiring Defendant to identify any third-party involved in the autodialed calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

7.  An injunction requiring Defendant to cease all unsolicited autodialed calling activities, and otherwise protecting the interests of the Classes;

8.  An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

9.  An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until they establish and implement policies and procedures for ensuring the third-party's compliance with the TCPA;

10.     An injunction prohibiting Defendant from conducting any future telemarketing activities until they have established an internal Do Not Call List as required by the TCPA;

11.     An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

12.     Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**SUZANNE KNORR**, individually and on behalf of Classes of similarly situated individuals

Dated: July 19, 2017            By:   /s/Afshin Siman
                                              One of Plaintiff's Attorneys


Blake J. Dugger*
blake@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
1011 W. Colter St., #236
Phoenix, Arizona 85013
Telephone: (602) 441-3704
Facsimile: (888) 498-8946

Attorney for Plaintiffs and the Classes

*pro hac vice to be sought